UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY MCFADDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4:14-CV-00803-CEJ |
| | ) | |
| 3M COMPANY, et al. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## <u>REPLY TO PLAINTIFF'S RESPONSE TO MSA'S MOTION TO DISMISS</u>

In reply to Plaintiff's Response (Doc. #13) to Mine Safety Appliances Company's Motion to Dismiss Plaintiff's Complaint, Defendant Mine Safety Appliances ("MSA") states as follows:[1]

### I. INTRODUCTION

Plaintiff's Response states that the argument for Federal preemption in MSA's Motion "flies in the face of established federal court rulings interpreting [the language of §653(b)(4) of the OSH Act]" and that "Federal courts have long held that [§653(b)(4)] 'prevents federal preemption of state tort law and workers compensation schemes.'" Doc. #13, pg. 5. Plaintiff is incorrect. Federal courts have recognized that state tort claims may be preempted by the OSH Act despite the savings clause in §653(b)(4).[2] It is not MSA, as Plaintiff alleges, that has failed to correctly interpret established court rulings. Plaintiff asks this Court to read and interpret §653(b)(4) in a vacuum, without reference to any other provisions of the OSH Act. That is not what the courts and cases examining §653(b)(4) have done, nor is it a proper method of statutory interpretation. In discussing preemption under the OSH Act, the court in *Gade v. Nat'l Solid Wastes Mgmt. Ass'n* specifically noted "we must not be guided by

---

[1] Hereinafter, references to "MSA's Motion" or "Motion" means MSA's Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint, Doc. #12.

[2] As set forth in MSA's Motion, the pertinent part of §653(b)(4) provides "[n]othing in [the OSH Act] shall be construed to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C.A §653(b)(4), see Doc. #12, pg. 4.

1

a single sentence or member of a sentence, but look to the provisions of the whole law." 505 U.S. 88, 99, 112 S. Ct. 2374 (1992). As Plaintiff has expressed displeasure at the lack of any case law interpretation in MSA's Motion, MSA sets forth the applicable case law herein. The relevant case law supports preemption of Plaintiff's claims.

## II. CASE LAW SUPPORTING PREEMPTION OF PLAINTIFF'S CLAIMS

The following provides the history, discussion, and analysis of relevant federal case law that provide complete support for MSA's argument that Plaintiff's claim are preempted.

### a. *Gade v. National Solid Wastes Management Association*

In discussing preemption under the OSH Act, the *Gade* court concluded that "§18(b) [of the OSH Act] 'unquestionably' pre-empts any state law or regulation that establishes an occupational health and safety standard on an issue for which OSHA has already promulgated a standard, unless the state has obtained the Secretary's approval for its own plan. Every other federal and state court confronted with an OSH Act pre-emption challenge has reached the same conclusion, and so do we."[3] *Gade*, 505 U.S. at 97, 112 S. Ct. 2374. (Hereinafter, §18(b), or 29 U.S.C.A. §667(b), will be referred to as "the preemption clause"). However, as the *Gade* court points out, the OSH Act contains two savings clauses, one in §18(a) and one in §4(b)(4) [or §653(b)(4)]. *Id.* As discussed in MSA's Motion, those savings clauses provide as follows:

- §18(a): [D]oes not prevent any State agency or court from asserting jurisdiction over any occupational safety or health issue with respect to *which no [established federal or national consensus] standard is in effect* under [the OSH Act]." 29 U.S.C.A. §667(a) (emphasis added) (hereinafter, for ease of reference and readability, the savings clause contained in §18(a), or 29 U.S.C.A. §667(a), will be referred to as the "**no Federal standard savings clause**.")

- §4(b)(4): Nothing in this act shall be construed to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising

---

[3] §18 (b) of the OSH Act provides: Any State which, at any time, desires to assume responsibility for development and enforcement of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated [by the Secretary under the OSH Act] shall submit a state plan for the development of such standards and their enforcement." 29 U.S.C.A. §667(b); *Gade*, 112 S.Ct at 2382, 505 U.S. at 97.

out of, or in the course of, employment." 29 U.S.C.A §653(b)(4) (hereinafter, for ease of reference and readability, the savings clause contained in §4(b)(4), or 29 U.S.C.A §653(b)(4), will be referred to as the "**personal injury savings clause**.")

*Gade* involved a declaratory judgment action brought by a trade association to enjoin the Illinois Environmental Protection Agency from enforcing Illinois laws requiring certain training, testing, and licensing of hazardous waste site workers. *Gade*, 112 S.Ct at 2380-2381, 505 U.S. at 92-93. As the case did not involve any 'injury, disease, or death of an employee arising out of, or in the course of, employment', the personal injury savings clause was not implicated. Therefore, *Gade* neither discusses nor determines the interplay between the preemption and personal injury savings clauses.

Nevertheless, Plaintiff's Reply states that "[i]n *Gade*, the Supreme Court pronounced that §653(b)(4) [the personal injury savings clause] 'does not prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue".' Doc. #13, pg. 5, citing *Gade*, 505 U.S. at 96. That is not at all what the Supreme Court pronounced in *Gade*. What the Supreme Court pronounced in *Gade* is "that the OSH Act precludes any state regulation of an occupational safety or health issue with respect to which a federal standard has been established, unless a state plan has been submitted and approved pursuant to §18(b) [the preemption clause]." *Gade*, 112 S.Ct at 2385, 505 U.S. at 102. MSA says precisely this in its Motion. While *Gade* sets forth the general principle that the OSH Act indeed preempts certain state regulation, is does not answer the question of whether, or when, a state law personal injury claim is preempted.

However, the *Gade* court does discuss a state tort claim when discussing *English v. General Electric Co.* Plaintiff relies on *English* to support his proposition that "[t]he Supreme Court has explained that state court claims survive federal preemption because state tort claims attach 'additional consequences to safety violations themselves' and are therefore not in conflict with federal statutory schemes." Doc. # 13, pg. 5, citing *English*. But in *Gade*, the Supreme Court stated that the reason it held that the state tort claim in *English* was not pre-empted was "because the state law did not have a 'direct and substantial effect' on the federal scheme." *Gade*, 112 S.Ct at 2387, 505 U.S. at 107, *citing*

*English,* 496 U.S. 72, 85, 110 S.Ct. 2270 (1990).[4] Finding this standard appropriate, the Supreme Court held "in the absence of the approval of the Secretary, the OSH Act pre-empts all state law that 'constitutes, in a direct, clear and substantial way, regulation of worker health and safety.'" *Id.* Clearly then, the *Gade* Court recognized the potential for preemption of a state tort claim that "constitutes, in a direct, clear and substantial way, regulation of worker health and safety".

Plaintiff misreads and misquotes *Gade*, stating that in "[i]n *Gade*, the Supreme Court pronounced that [the personal injury savings clause] "does not prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue." Doc. #13, pg. 5. Importantly, the language that Plaintiff's Reply cites as part of the personal injury savings clause is not from the personal injury saving clause, but in fact part of the "no Federal standard saving clause". Moreover, Plaintiff fails to cite the full language of the "no Federal standard clause". In actuality, *Gade* states "Section 18(a) [the no Federal standards clause] does not "prevent any State agency or court from asserting jurisdiction over any occupational safety or health issue with respect to *which no [federal] standard is in effect*." 29 U.S.C.A. §667(a) (emphasis added). For Plaintiff to misrepresent to this Court that the *Gade* Court was discussing the personal injury savings clause when it was quoting the "no Federal standard savings clause" is disingenuous. Moreover, excluding the "with respect to *which no [federal] standard is in effect*" language clearly has a significant effect on the impact of the no Federal standard savings clause because this language provides that states can in fact be prevented from asserting jurisdiction over occupational health and safety issues. While Plaintiff's Reply alleges that MSA's Motion is "wrong", MSA is not the party misrepresenting the law.

### b. *Geier v. American Honda Motor Co., Inc*.

While *Geier v. American Honda Motor Co., Inc.,* does not deal with the OSH Act, it does discuss in detail the interplay of statutory schemes that include both a preemption provision and a savings

---

[4] See also *In re Welding Fume Products Liability Litigation*: The basis for the Court's conclusion [in *English*] was that the effect of an award damages "is neither direct nor substantial enough to place petitioner's claim in the preempted field." 364 F.Supp.2d 669, 680 (2005), citing English at 496 U.S 85.

clause specific to common law liability. 529 U.S. 861, 120 S.Ct. 1913 (2000). *Grier* dealt with a personal injury claim brought against American Honda Motor Company under District of Columbia tort law claiming that the car at issue was negligently and defectively designed because it lacked a driver's side airbag. *Id.* at 865. Both the District Court and Court of Appeals found that plaintiffs' claims were preempted under the National Traffic and Motor Vehicle Safety Act of 1966 ("Safety Act") and related standard FMVVS 208. *Id.* On review, the Supreme Court affirmed, finding that although the Safety Act and FMVVS 208 did not expressly preempt plaintiffs' tort claims, they were preempted by the ordinary principles of preemption. *Id.* at 867.

The preemption clause in the Safety Act at issue in *Grier* provided "[w]henever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment[,] any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard." *Id.* at 867, citing 15 U.S.C. §1392(d) (1988). The Safety Act also contained a savings clause providing that "compliance with a federal safety standard does not exempt any person from liability under common law." *Id.* at 868, citing 15 U.S.C. §1397(k) (1988).

In determining the interplay of the preemption provision and the savings clause, the *Geier* court determined that while the savings clause at issue removed tort actions from the scope of *express* preemption, it did "not bar the ordinary working of conflict preemption principles." *Id.* at 869. In finding "[n]othing in the language of the savings clause suggests an intent to save state-law tort actions that conflict with federal regulations," the *Geier* court explained:

> [T]his Court has repeatedly "decline[d] to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law." We find this concern applicable in the present case. And we conclude that the saving clause foresees—it does not foreclose—the possibility that a federal safety standard will pre-empt a state common-law tort action with which it conflicts…

> On the one hand, the pre-emption provision itself reflects a desire to subject the industry

to a single, uniform set of federal safety standards. Its pre-emption of *all* state standards, even those that might stand in harmony with federal law, suggests an intent to avoid the conflict, uncertainty, cost, and occasional risk to safety itself that too many different safety-standard cooks might otherwise create. This policy by itself favors pre-emption of state tort suits, for the rules of law that judges and juries create or apply in such suits may themselves similarly create uncertainty and even conflict, say, when different juries in different States reach different decisions on similar facts.

On the other hand, the saving clause reflects a congressional determination that occasional nonuniformity is a small price to pay for a system in which juries not only create, but also enforce, safety standards, while simultaneously providing necessary compensation to victims. That policy by itself disfavors pre-emption, at least some of the time. But we can find nothing in any natural reading of the two provisions that would favor one set of policies over the other where a jury-imposed safety standard actually conflicts with a federal safety standard.

Why, in any event, would Congress not have wanted ordinary pre-emption principles to apply where an actual conflict with a federal objective is at stake? Some such principle is needed. In its absence, state law could impose legal duties that would conflict directly with federal regulatory mandates, say, by premising liability upon the presence of the very windshield retention requirements that federal law requires. Insofar as petitioners' argument would permit common-law actions that "actually conflict" with federal regulations, it would take from those who would enforce a federal law the very ability to achieve the law's congressionally mandated objectives that the Constitution, through the operation of ordinary pre-emption principles, seeks to protect. To the extent that such an interpretation of the saving provision reads into a particular federal law toleration of a conflict that those principles would otherwise forbid, it permits that law to defeat its own objectives, or potentially, as the Court has put it before, to "'destroy itself.'"

*Id.* at 870-872 (internal citations omitted). The *Geier* court held that conflict preemption applies whenever state law "under the circumstances of th[e] particular case ... stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"—whether that "obstacle" goes by the name of "conflicting; contrary to; ... repugnance; difference; irreconcilability; inconsistency; violation; curtailment; ... interference," or the like. *Id.* at 873 (citations omitted). As the *Geier* recognizes, the Supreme Court "has thus refused to read general 'saving' provisions to tolerate actual conflict *both* in cases involving impossibility *and* in 'frustration-of-purpose' cases." *Id.*

### c. *In re Welding Fume Products Liability Litigation*

The next case on point is *In re Welding Fume Products Liability Litigation*, which required the Northern District of Ohio to decide whether plaintiffs' state failure to warn claims were preempted

under OSHA's HazCom regulation. 364 F.Supp.2d 369 (2005). While the *Welding Fume* court found that the claims were not preempted, the case clearly demonstrates that the personal injury savings clause does not automatically save tort claims. Rather, a preemption analysis is required to make the determination of whether state tort claims are preempted.

In determining that the *Welding Fume* plaintiffs' failure to warn claims were neither expressly nor impliedly preempted, the court undertook a detailed analysis of Supreme Court preemption cases. *Id.* at 682. "As a starting point, the Supreme Court remains firmly committed to the rule that "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Id.,* citing *Medtronic,* 518 U.S. at 485, 116 S.Ct. 2240 (internal quotations and citations omitted). The *Welding Fume* court noted that Congressional intent is primarily discerned from the statutory preemption language and the statutory framework, but also revealed by the 'structure and purpose of the statute' and a "reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Id.* (citations omitted)

Like *Grier*, the *Welding Fume* court recognized that "the presence of a saving clause in a federal statute provides strong evidence that Congress did not intend to pre-empt all state law torts," but "[o]n the other hand, neither an express pre-emption provision nor an explicit saving clause preclude application of the doctrine of implied pre-emption." *Id.* at 683 (citations omitted).

*Welding Fume* goes on to examine and explain the pre-emptive scope of federal regulations promulgated by a federal agency pursuant to Congressional authorization. *Id.* "When federal regulations are cited as the basis for preemption, a court must examine especially carefully what the regulations require. Only when state law actually and directly conflicts with the federal regulations is pre-emption appropriate." *Id.* at 683-684. "[A] federal agency may pre-empt state law only when and if it is acting within the scope of its congressionally delegated authority." *Id.* at 684, quoting *Louisiana Public Service Comm'n v. F.C.C.,* 476 U.S. 355, 374, 106 S.Ct. 1890 (1986). The *Welding Fume* court

noted that the preemptive effect of any regulation promulgated by OSHA cannot exceed the pre-emptive reach of the OSH Act intended by Congress. *Id.*

Applying the foregoing, the court held that plaintiffs' failure to warn claims were not preempted by the HazCom standard. *Welding Fume* makes clear that its holding is based on the fact that "ultimately, the duty invoked by the plaintiffs *does not actually conflict* with the HazCom Standard. The defendants can comply with both the HazCom standard and their alleged state law duty to warn plaintiffs; one does not interfere with the other." *Id.* at 694-695 (emphasis in original). The court concluded "that there is no substantial, clear, or direct conflict between the HazCom standard and the common law duty to warn invoked by plaintiffs." *Id.* at 694.

Carefully examining the "[l]abels and other forms of warnings" required under the HazCom Standard, the *Welding Fume* court found that the only "duty owed is to ensure that each container of hazardous chemicals is labeled, tagged or marked with *"[a]ppropriate hazard warnings"*. *Id.* at 695, quoting §1910.1200(g) (emphasis in original). The court stated:

> Nowhere does the HazCom Standard define what makes a hazard warning sufficient or "appropriate," except that it must "convey the specific physical and health hazards" of the chemicals. Ultimately, the HazCom Standard does not prescribe in any way the language a chemical manufacturer or other employer must use to warn about health hazards. The manufacturer or employer can choose to give whatever warning it deems appropriate…[T]he federal regulation leaves manufacturers and employers to determine for themselves whether they have complied with the regulation's instruction to give "appropriate" hazard warning…In effect, the HazCom Standard is silent regarding what warning the defendants must provide, in their role as manufacturer or employer, to employees who use their product; the HazCom Standard only requires that the defendants provide *some* warning, which must be "adequate." This requirement simply does not conflict with any general state law duty; if anything, OSHA's requirement of an "adequate warning" is entirely contiguous with the general duty imposed by the common law to warn others of known hazards.

*Id.* at 696-697. Because plaintiffs' claims did not conflict federal law, the *Welding Fume* court concluded they were not pre-empted. *Id.* at 697.

### d. *Gonzalez v. Ideal Tile Importing Company, Inc.*

In *Gonzalez*, the New Jersey Supreme Court held that plaintiffs' common law tort claims against a forklift manufacturer whose product was in compliance with OSHA standards **was preempted**. 184 N.J. 415, 877 A.2d 1247 (2005). At issue was whether the forklift was defective for failing to include warning devices other than a back up horn, the only warning device required by OSHA. *Id.* at 418. An ANSI standard, adopted by OSHA, stated that additional warning devices "suitable for the intended area of use may be installed when requested by the user." *Id.* at 423. The court found plaintiffs' claims preempted because "like the phased-in airbag regulation considered in *Geier,* ANSI specifically creates a standard for 'other' warning devices, requiring the user to determine their need, dependent upon the 'intended area of use.'" *Id.*, quoting *Gonzalez v. Ideal Tile Importing,* 371 N.J. Super. 349, 853 A.2d 298 (App. Div. 2004). The lower court noted that ANSI had determined that the inclusion of additional warning devices "actually may tend to create additional dangers in the workplace. That *is* a standard not *the absence of* a standard, and the state regulation urged by plaintiff, through the imposition of tort liability, would stand 'as an obstacle to the accomplishment and execution of' the federal regulation regarding additional warning devices." *Id.* The New Jersey Supreme Court agreed, and found that plaintiffs' claims were preempted. *Id.,* citing *Geier,* 529 *U.S.* at 881, 120 S.Ct. at 1925. **The U.S. Supreme Court denied plaintiffs' petition for *writ of certiorari*.** 546 U.S. 1092, 126 S.Ct. 1042 (2006).

### e. *Lindsay v. Caterpillar, Inc.*

In *Lindsay v. Caterpillar, Inc.*, plaintiff brought a state strict liability claim alleging that defendant's sideboom pipelaying tractor was defectively designed for failure to have a rollover protective device. 480 F.3d 202, 204 (2007). The District Court, relying on *Gonzalez*, held that plaintiff's claim was preempted because an OSHA regulation concerning material handling equipment that exempted sideboom pipelaying tractors from requiring a rollover protective device created a

federal standard in conflict with the state law claim. *Id.* at 204-205. Neither *Gonzalez* nor the District Court in *Lindsay* provided an analysis of the personal injury savings clause.

The Third Circuit reversed on appeal, finding that *Gonzalez* was not instructive to the facts in *Lindsay* because the regulation at issue neither required nor forbid rollover protection, and did not regulate "the universe of protective structures for sideboom pipe layers." *Id.*, citing *Gonzalez,*

> The regulatory language exempting sideboom pipe layers from the requirement for rollover protective structures cannot reach beyond the authority Congress granted. Therefore, the absence of a requirement for an employer does not implicate third-party duties for a manufacturer… The Act's savings clause means that a regulation that neither requires nor forbids workplace equipment to have a protective structure cannot stand as a preemptive force against an employee's right to recover against a third-party manufacturer of that product for defective design.

*Id.* at 208-209. Although the *Lindsay* court "concluded that, *under the circumstances of this case*, the Act's savings clause effectively halts further preemption analysis", it went on to note that the result would be the same if it had decided the case under the principles of conflict preemption because the regulation "is one that excludes but does not forbid a protective device". *Id.* at 212 (emphasis added).

### III. ANALYSIS OF APPLICABLE FEDERAL LAW TO CLAIMS AT ISSUE

There is absolutely no question from the foregoing that federal courts recognize certain tort claims may be preempted under the OSH Act despite the presence of the personal injury savings clause if the claim "has a direct and substantial effect on the federal scheme" or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." See *Gade*, 505 U.S. at 97, *Geier*, 529 U.S. at 823. *Geier* makes perfectly clear that when a statutory scheme contains both a preemption provision and a savings clause, the ordinary principles of conflict preemption apply.

Although preemption was not found in *Welding Fume* and *Lindsay*, both courts undertook a preemption analysis to determine whether the state tort claims at issue were preempted under the OSH Act. And both did so with recognition that the personal injury savings clause does not in and of itself save state tort claims from preemption under the OSH Act. If tort claims cannot be preempted under the OSH Act as Plaintiff claims, undergoing such a preemption analysis would be futile. The fact that

the analysis was done proves that torts claims can indeed be preempted under the OSH Act. Moreover, it is telling that the Supreme Court denied *certiorari* in *Gonzalez*, where the New Jersey Supreme Court found that plaintiff's tort claims were preempted by the OSH Act.

In *Welding Fume*, the court found that plaintiffs' failure to warn claims were not preempted because there was no conflict with the alleged state law. The HazCom Standard at issue "leaves manufacturers and employers to determine for themselves whether they have complied" with the regulation. That is not at all the case here. The Bureau of Mines and NIOSH determined whether the Dustfoe 66 complied with the applicable federal regulations, found that it did, and approved it. Unlike the warning labels at issue in *Welding Fume*, the agencies specifically provided to MSA the approval label, including any required caution statements and limitations, that MSA was required to place on the Dustfoe 66. Doc. #12, pg. 12. The facts are completely distinguishable, and the difference critical.

Likewise, *Lindsay* is not on point. In *Lindsay*, a manufacturer argued for preemption based on a regulation that neither required nor forbid an *employer* to have a rollover protective device on sideboom pipe layers operated by employees. The employer was free to install such device or not, the federal government simply did not regulate it. The court noted, "the absence of a requirement for an *employer* does not implicate third-party duties for a *manufacturer*." Here, however, the presence of a requirement for Plaintiff's employer clearly and directly implicates third-party duties for MSA. Plaintiff's employer was required to provide him with respirator approved by the Bureau of Mines ("Bureau") or NIOSH. The Bureau and NIOSH approved respirators under a detailed regulatory scheme full of specific requirements that a manufacturer must meet in order to obtain initial approval of a respirator as well as to maintain the approved status of the device. The federal government did, in fact, regulate 'the universe of approved respirators'. See *Lindsay* 480 F.3d at 205, citing *Gonzalez.*

*Gonzalez,* however, is on point. In *Gonzalez*, the plaintiffs' claims were preempted where the standard at issue allowed for additional warning devices if 1) requested by the user, and 2) "suitable for the intended area of use". 184 N.J. at 423, 877 A.2d 1247. It is important to point out that the claims

were preempted even though the addition of other warning devices would not have implicated the direct involvement of the federal government. Here, even states that have assumed responsibility for the development of occupational health and safety standards cannot impose standards on products distinct from federal standards without a federal finding that the standards 1) are required by compelling local conditions, and 2) do not unduly burden interstate commerce. States that have not assumed responsibility for the development of occupational safety and health standards, like Missouri, are prohibited from imposing *any* occupational health and safety standards if the state standards conflict with federal law. *Gonzalez* completely supports preemption of Plaintiff's claims.

Notably missing from all the cases discussing OSH Act preemption is any discussion of the need for national uniformity in safety product regulation and the potential of state tort claims to unduly burden interstate commerce. This is likely because 1) in *Welding Fume* and *Lindsay*, the courts found no conflict between the state standards and federal law, and therefore did not need to address this factor; and 2) in *Gonzalez*, the standard at issue would have required a specific request by the forklift user for the additional warning devices, which does not implicate a manufacturer having to modify all similar products. As discussed in MSA's motion, and will be discussed below, the need for uniformity in respiratory protective device regulation and the undue burden on interstate commerce caused by state tort claims lends further support for preemption of Plaintiff's claims.

**IV. FEDERAL REGULATION: BALANCING FILTRATION, BREATHABILITY, AND COST OF RESPIRATORS**

Air-purifying respirators likely to have the greatest positive impact on worker safety and health share three characteristics: 1) effectively filter respirable contaminants, 2) allow the wearer to breathe comfortably, and 3) affordability. A modification of any one characteristic generally affects the other two. Therefore, the federal approval and regulation scheme is specifically designed to find the proper balance between these characteristics to ensure protection of the greatest number of employees.

This balancing act can be seen in comments included in the publication of new approval regulations in 1995. 60 FR 30336-01 (June 8, 1995). The acceptable breathing resistance for air-

purifying respirators in the final rule was higher than that of the proposed rule. *Id.* NIOSH explained: "This increase in acceptable breathing resistance for particulate respirators will enable manufacturers to produce respirators meeting the new requirements more expeditiously and at lower cost than the proposal would have allowed. This small increase in maximum allowable breathing resistance for particulate respirators does not add substantially to physiologic burden for respirator users, and will be compensated by increased worker protection provided by the new filter efficiency tests and classification system. *Id.* Likewise, NIOSH rejected suggestions requiring 99% filter efficiency, noting "[s]uch high filter efficiency poses technologic challenges, increases costs to manufacturers and users, and increases breathing difficulty for respirator wearers. NIOSH believes that a 95% minimum efficiency best balances the public health concern and these competing considerations." *Id.*

Just as important as filtration and breathability is cost. A respirator that strikes the ultimate balance between breathability and filtration but is never worn because it is cost is prohibitive provides no protection at all. As the cost to design and manufacture approved respirators increases, the price of respiratory protection increases. The supply of respirators may decrease if manufacturers are forced out of the market. See *Respirators to the Rescue: Why Tort Law Should Encourage, Not Deter, the Manufacture of Products That Make Us Safer*, 33 Am. J. Trial Advoc. 13 (2009). Likewise, employees are less likely to be provided with approved respirators if cost is burdensome. Regulating cost is therefore crucial to ensure worker safety and health as well as the burden on interstate commerce.

Using it powers to regulate commerce and provide for the general welfare, Congress enacted the OSH Act "to assure so far as possible ... safe and healthful working conditions" for "every working man and woman in the Nation." 19 U.S.C.A §651. The foregoing makes perfectly clear that federal regulation of respiratory protection devices is carefully designed to carry out Congress' intent.

**IV.  PLAINTIFF'S CLAIMS ARE AN OBSTACLE TO THE PURPOSE AND OBJECTIVE OF CONGRESS**

Plaintiff's claims against the Dustfoe 66 boil down to this: Although the Dustfoe 66 was specifically tested, certified and approved for protection against silica dust, bore a federal approval

label for protection against silica dust, and was an "approved" respirator appropriate for an employer to provide for protection against silica dust, the Dustfoe 66 did not comply with federal regulations and did not protect against silica dust. The requirements Plaintiff seeks to impose are clearly different from, distinct from, contrary to, repugnant with, irreconcilable with, inconsistent with or interfere with federal regulations. See *Geier*, 529 U.S. at 873, 120 S.Ct. 1913; Doc #13, pg. 7. The exact terminology is irrelevant. *Id.* What matters is that the standards plaintiff seeks to impose stand as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress. *Id.*

Allowing a jury to find a federally-approved air-purifying respirator defective in spite of the carefully considered and executed federal scheme in place to balance filtration, breathability, and cost is a clear and profound obstacle and frustration to the purpose and objectives of Congress. Plaintiff asks a jury find that the Federal agencies Congress selected to regulate testing and approval of respirators were wrong when they reviewed the application for approval of the Dustfoe 66, tested it pursuant to the standards they promulgated, and approved it. A clearer case of an obstacle to the accomplishment and execution of the objectives of Congress, or "frustration of purpose", is hard to imagine. What could possibly be the purpose of Federal agency testing, certification, and approval, if such approval amounts to nothing in face of a state tort claim that a product was defectively designed? Allowing employees provided with federally approved respirators by their employer to bring suits such as this one destroys the significance of federal approval. All the time, money, and effort expended by a manufacturer and the Federal agencies in the process of obtaining and/or granting approval to a respirator and ensuring that a respirator continues to maintain the quality required for approved status is obliterated by a finding that an approved respirator is defective under state law. While federal approval might continue to be significant to employers required to provide federally approved respirators, it would have no meaning to manufacturers. In fact, if subject to state tort liability regardless of whether its product was federally approved, manufacturers may be deterred from seeking approval to avoid suits like this one. If approved status offers no protection, and in fact only makes a

14

manufacturer vulnerable to additional claims alleging that an approved product failed to comply with federal regulations, there is little impetus to seek approval. Moreover, state tort suits can make it so that a manufacturer of a federally approved respirator would have to manufacture a different version of every product for every state based on state common law or jury verdicts.

Claims such as this create the slippery slope to a situation where there are no approved respirators for employers to provide employees as required. Employees are left unprotected from the harms that the OSH Act and Mine Act, and the related regulations, sought to protect them from in the first place. When viewed in this light, it is crystal clear that the claims that Plaintiff brings in this case are exactly the type that Congress intended to preempt under the OSH Act, and not the type Congress intended to save by including the personal injury savings clause. "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade*, 112 S.Ct at 2388, 505 U.S. 88.

### V. CONCLUSION

The cases discussed herein clearly negate Plaintiff's assertion that federal law "specifically prohibits federal preemption of [Plaintiff's claims]." Doc. #13, pg. 8. In response to Plaintiff's curious argument that MSA's Motion "is completely without merit and does not represent even a good faith argument of any extension of existing law" on account of the absence of cases holding that state tort claims against respirator manufacturers are preempted, MSA notes the absence of case law holding that such claims are not preempted. As there are no cases on point, MSA noted that the approval process for respiratory protection is "remarkably similar" to that of class III medical devices. This is in no way suggests that MSA understands a respirator to be a medical device. Plaintiff's understanding of MSA's Motion to suggest that the Dustfoe is subject to FDCA regulation is mistaken.

WHEREFORE, for the reasons set forth herein and in MSA's Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint (Doc #12), MSA respectfully requests that this Court dismiss Plaintiff's claims against MSA, and for all other and further relief to which it may be entitled.

15

Respectfully submitted

**SmithAmundsen, LLC**

/s/ Anne E. Bode
W. Jeffrey Muskopf - #71431
Anne E. Bode - #61222
120 S. Central Ave., Suite 700
St. Louis, Missouri 63105
Telephone: (314) 719-3746
Facsimile: (314) 719-3759
jmuskopf@salawus.com
abode@salawus.com

ATTORNEYS FOR DEFENDANT
MINE SAFETY APPLIANCES COMPANY

## PROOF OF SERVICE

I hereby certify that on June 30, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Anne E. Bode